Due to technical difficulties, we are unable to provide the entire audio recording in this case. Well, I'd argue each. Don't contest the cartoon. I don't contest it, but if the Fourth Circuit finds, and I know that the nature of this court, which is good in some instances, in many instances is to look at what is the strict letter of the law, okay? The strict letter of the law, clear and convincing. Did the government show, meaning Mikhaylov met the first two elements, certainly on the first claim, on the gun claim, where he puts in his or in his rebuttal to the decision maker, I made these disclosures, and I've made many, and everybody agrees to that. Okay, so now the question is, would they have done the same thing anyway? So there's two ways of looking at that. Number one, the car test. The car test is or at the very least, it can say, yeah, that makes sense, and we now choose in this circuit to adapt the car test. Okay. Are you aware of any court that has a different test that follows something other than the car factors or has expanded on them or cut them back? No, I have never, in fact, argued in any other circuit on this particular issue of the car test. I don't believe, I certainly haven't been in person. Well, you're not arguing that we should change, that we should not adopt it. Right, right. You don't present an alternative to the car test. That's right. You have accepted the car test. I accept that in this case and in this case. I wasn't trying to trick you or anything. No, I understand, but I understand that presentation today, the court has other concerns and are we going to adopt this test or not, but at the end of the day, in this case, the car test favors my client. So yes, I accept it. And the other thing that I'll say is with Herrera-Niles, and this is very interesting, okay, because this is where I think the judge also errs. The judge says in his opinion, yeah, well, there's all kinds of testimony that she was retiring anyway. And because she was retiring, we're going to leave her alone. And he believed that. Okay. So there are two points in the test, in the record that I found that challenged that. Well, you are going to select the prosecution? Yes. Yes. Which is different than, for example, in the second case. Which one of those problems with the car test does that come under? Okay. That, Your Honor, I believe is number three. Okay. Number three. Okay. That there was somebody else involved in this who wasn't. That's right. Exactly. Disciplined. Right. Right. That's number three. Okay. The similar actions. Okay. So Miss Washington, who's this HR person, okay, she says on page, in her testimony, I think it's on 602 to 604, she assisted here. And that the reason here is because he was the guy who gave the order, not her. And then there's another testimony that it's that the court gets into this on page 669 of the record. Okay, this is really interesting, where there's an exchange about Miss Herrera-Niles settlement agreement, that the government, the government, the government argues this. The reason she's different is she was retiring. Okay. We then find out, no, she settled with the agency. And it was a global settlement. And that Mr. Whitaker, the trial lawyer, says that he says, he says, there was a settlement agreement, and it's global. And then they make the argument, in essence, that's what makes this case. That's why there's no comparator. Okay, well, there's an interesting question. Can you do that? Meaning that, meaning this, this court is aware of there, there's case law out there, for example, on Title VII cases, where someone then says, well, look, there's a layoff of 100 people. And we're going to pay this guy more than this other guy. Okay, well, it's not so simple that you could do that without raising a discrimination claim. Could you do that here? And even if you find, even if you find that Herrera-Niles is not a comparator, okay, all right. So then as the judge says, that factor can't weigh in favor of the agency. So now you're down to two. And the two factors are, they presented no affirmative evidence that they didn't retaliate. And number two, and number one, there's no evidence that the guy did anything wrong, really. That's my case. Thank you. Thank you very much. Your news saves some rebuttal time. Thank you. Krista Niack. Yes, Your Honor. Thank you. Good to have you with us. Thank you, Your Honor. I'm glad Mr. Fisher started with the evidence in the gun cases. I'll refer to it as well. Because of course, this court is reviewing for substantial evidence, whether or not the administrative judge's decision is supported by clear and convincing evidence. And the Federal Circuit has specifically discussed how those two standards of proof interact with each other, essentially saying, you know, if this court were reviewing for substantial evidence, a preponderant evidence standard, for example, there's less evidence that needs to be lined up to support the AJ's decision, as opposed to clear and convincing. And so I wanted to just briefly walk through what the evidence on the record does show, what we know about what happened. We know that Ms. Ferrer-Niles had a meeting in July, and that at some point during that meeting, she asked Mr. McKaylock to go about procuring certain items for guns. We know that Mr. Full, who is another supervisor in that office, was present at that meeting. And he testified during the agency's investigation, and this is page 287 in the record, that he absolutely understood that she was asking for accessories to go with personally owned weapons. We know that shortly after that meeting, Mr. McKaylock spoke to Mr. Jaspal, and that Mr. Jaspal left that conversation absolutely understanding that the order was for personally owned weapons. We know that because he sent several emails around that time with POWs, which is the acronym they use in the subject line, and those are on pages 97, 95, and 105 in the record. We know that Mr. Jaspal searched in the FACS system, which is a system the agency uses to register all of the guns and all the accessories that are in use. He searched for the types of guns that these accessories were going to be for, and determined that there was only one or two that were actually agency issued in the office, that the rest were actually personally owned weapons that had been approved for duty use. Well, you're saying this is an illegal order? Absolutely, Your Honor. And the question, Mr. McKaylock- You're saying that this car test ought to be the law in the 4th Circuit? Yes, Your Honor. We do not disagree with that. We think that as other circuits- But we have never answered that question. This court has not specifically, but we think that given the- You agree with Mr. Fisher? Absolutely. On what the proper test is? Yes. Yes, Your Honor. We're not contesting- We haven't said that. You all think that's what we ought to- We believe that that would be reasonable, Your Honor, because other circuits have adopted it. And obviously, the Federal Circuit has spent a fair amount of time- Started with the Federal Circuit. It did, Your Honor. It's from a case from 1999 in that court. And so, it has been the law that the Federal Circuit has been applying for over 20 years at this point in time. But you say it was an illegal order? Yes, Your Honor. Against agency policy, not necessarily illegal, but definitely contrary to agency policy. And everyone agrees that if the order were for accessories for personally owned weapons, it would be against policy. Even Mr. McKayloff admits that in his interviews with the agency. And so, again, we know that- You disagree with my characterization. Is it illegal? Your Honor, I just don't know that there are necessarily any crimes broken. Of course, this was a civil action. This is internal. It was an improper order, certainly, to the extent- It's not a proper order. Yes. It was contrary to agency policy. It could be. It's a question whether it's proper or improper. Is that the proper terminology? Contrary to policy or not, I think would be the- Contrary to policy. Yes. And the agency policy- Policy of the DHS? Exactly, Your Honor. Yes. They have an interim policy that very specifically says that items for personally owned weapons that have been approved for duty use cannot be purchased with agency funds. So, that's the agency policy. That's what was confirmed in the multiple emails that Mr. Jaspal sent to the office of the legal advisor in the agency and then also those who do the procurement of these actual items for the agency. He's called the legal advisor, a term used in his title, legal advisor. I'm asking about this. For purposes of this car test, we have to say what the standard is for the order, use the proper terminology? Not necessarily, Your Honor. Obviously, the terminology is reflected in the briefs and what the agency actually used. What's the Federal Circuit say? With regard to- About what kind of an order it has to be. Is it an illegal order or an improper order or what? The Federal Circuit tends to look at whether or not there's- Again, the first car test is whether the strength of the evidence support the agency's action. So, what actually happened? And so, it is whether or not the Federal Circuit looks, without really getting into terminology, they look at did it actually happen? Was there substantial evidence to prove by clear and convincing evidence that the administrative judge's determination was correct? And again, we think that the record here is very strong that this order was actually issued. Again, Mr. Jaspal understood it at the time to be that order. The search and facts revealed that there very few of these guns that were government issued. They were actually mostly personally owned guns in the actual office. We also know that when Mr. Mikhailov called and asked Mr. Jaspal about the status of this order, Mr. Jaspal told him that he wouldn't do it because he thought it was against policy. And Mr. Mikhailov concedes that at page 427 in the appendix. And then, as Judge Rushing referred to with opposing counsel, within hours of that conversation, Mr. Mikhailov began the process of removing Mr. Jaspal from his position of the senior firearm instructor. And I think also importantly, we know that the person who replaced him, Mr. Meadows, told the agency investigators that he never placed that order. The person that came in did not have no issue with the order and then proceed to place it. But rather, those items were never actually purchased by the agency. And I think perhaps the most strong evidence on the record is the fact the agency itself conducted a very thorough investigation into all of these allegations, creating a 30-plus page report of the investigation with several hundred pages of exhibits attached to it, emails, transcripts of interviews with witnesses, so on and so forth. All of that evidence is lined up against from what Mr. Mikhailov has said is essentially, no, I just never gave that order. And this is precisely, so the court is essentially presented with, does the administrative judge have substantial or clear and convincing evidence? And is there substantial evidence to support that clear and convincing evidence finding on behalf of the administrative judge? We submit that there absolutely was, particularly when you take into account that the administrative judge is the one who actually witnesses those who are testifying in court and makes the credibility determinations. And while this court has not opined on the car in similar circumstances, specifically in the NLRB versus CWI of Maryland case, which is a decision from this court in 1997, that essentially says that credibility determinations in circumstances like this should be accepted unless there's really extraordinary circumstances. And so we do believe that the car factors were satisfied and that the administrative judge's decision in the gun case is supported by substantial evidence. I will touch briefly on the other case, unless there are questions from the panel. And so the other case, which was referred to as the harassment case, that decision is also supported by substantial evidence. And in a lot of ways, I think it's easier because there's no question as to what Mr. Mikhailov actually said, because it was via email and it was via text. And we've put the text of some of the emails that he sent to his subordinate in our brief, on pages seven and nine. But the court can see what was said to his subordinate. And we believe that, and again, so there's no question what was actually said. Really, the crux of Mr. Mikhailov's argument in this case seems to be that the agency improperly followed its policy when it determined that based on the harassment allegation having been filed, that it would separate Mr. Mikhailov from the woman who issued a no contact order. And that really seems to be the only argument that Mr. Mikhailov has presented, that he thinks the policy should be otherwise, which is the theme in both of these cases. Because in the other case, he explains multiple times to the investigators that he just doesn't agree with the agency's policy. He thinks that if you can buy bullets for a personally owned gun, then the agency should also buy your holster. Here, he disagrees with the way that the harassment policy was implemented, but that in and of itself, of course, does not mean it was improper for the agency to implement that policy in that manner. As the administrative judge noted, the policy directive and its DHS Directive 256-01 directs an agency to take interim measures while an investigation is ongoing, and defines that as actions to make sure that harassment does not continue while the investigation is pending. Here, we have a supervisor who was accused of harassment by his subordinate, along with that accusation, of course, were all of these emails that ended up forming the basis of the administrative judge's decision. And as the administrative judge found, it was in consult with the Employee Labor Relations, which is employment counsel at the actual agency, that his supervisors made the determination to issue the no contact order. The no contact order was drafted by counsel, and to transfer him to a position of equal responsibility, so that there would be no opportunity for any harassment to continue. So you want us to affirm in both cases? Yes, Your Honor. Are these appeals or petitions for review? I guess Mr. Mikhailov is referred to as the petitioner. You mentioned the NLRB case. In the NLRB cases, they come up to us on petition for review. And criminal cases come up here on petition for review. And this is unique for us when we skip the stage even. We have jurisdiction pursuant to a, or it gets her under a petition for review or an appeal, or do you know? If we, if it's petition for review, like in the NLRB case, we either grant or deny the petition for review. And if it's an appeal, we affirm or reverse or make things remand or something. And I'm exploring with you what this position might be for us. And because it's kind of unique. I would think that, so there's language at the end of the decisions from the MSPB, which is the agency that issued these orders, talking about appeal rights and how the appellant or how the petitioner can bring their appeals to either the federal circuit or a circuit court like this. And obviously the federal circuit, when it came to the notice of appeal here, do you know? Yes, I believe a notice of appeal was filed in both cases. So yes, I think notice of appeal would, an appeal. Well, two notices, one in each case, a notice of appeal rather than a petition for review. Yes. Yes, your honor. Yes. What you want, is affirmance. Absolutely, your honor. Yes. Yes. We would ask that you figure out. Thank you, your honor. If there are no further questions from the panel, I will leave the rest of my time. Thank you very much. Thank you, your honor. Appreciate it. Good to have you with us. Mr. Fisher, just a couple of brief points on rebuttal here. First of all, page 622 of the record, okay, of the gun case. And this is the cross-examination of the decision maker. He says he admits there is no reference to a personally owned weapon in the entire email chain between Mr. Mikhailov and Mr. Jaspel. I specifically asked this man, so there's no quote, I know these are POWs, get them anyway. He says, yes, your guy didn't say that. Okay. So what really this is, is I think there's an important thing that can come out of today, regardless of how the court rules on this particular, either of these cases. That is, I think, yes, the court should adapt the car test. Okay. With one little tweak to it and make one, even though no one has said this affirmatively, I know the federal circuit has not said this, I don't believe, and I've done a lot of these. That's the car test. Those are the three factors. But still, within those three factors, or the combination of those factors, there has to be clear and convincing evidence that the government would have done the same thing anyway. However you break that down, if you break it down to, however, like this judge does it, you know, the government doesn't have an affirmative burden on each of those elements. That doesn't, okay, I get it. But the thing that I think that the law should do here is, in its opinion, my humble opinion, is have something that says, yes, however you break this anyway. Okay. So if one factor is- Has the federal circuit spoken on that? I don't believe so. I don't believe so. You don't know, then. Right. You don't know. I don't know. I don't know. And it might be something to look up. I haven't found it. But I think that language, I think that language is important for these. And I think that when the court applies that language- We like to have the lawyers look it up. Yeah. I couldn't find it. But I think I understand it. But I think that makes a lot of sense because clear and convincing means just that. And we have to have someone say that. And I think this court is apt to be those people that does that. I have nothing further. Thank you. Thank you, Mr. Fisher. We appreciate your presentations. It's good to have you here. If it weren't for the pandemic and the conditions that we're still under, we would leave the bench now in the tradition of the Fourth Circuit and go to the well of the court and visit briefly with each of the lawyers personally. We're not doing that now because we've suspended that procedure. I appreciate that very much, Your Honor. Maybe next time we'll be able to do that. But with that, we will take the matter under advisement, Madam Clerk, and call the next case. Thank you.
judges: Robert B. King, Allison J. Rushing, William B. Traxler Jr.